Carol TUCKER, a/k/a Carrie Tucker, Plaintiff-Respondent,

v.

Marvin S. MARCUS d/b/a MGM Health Club, and Continental Casualty Company, Defendants-Appellants.

Supreme Court

*No. 86–2256. Argued October 6, 1987.—Decided February 11, 1988.*

(On bypass of the court of appeals.)

(Also reported in 418 N.W.2d 818.)

For the defendants-appellants there were briefs in court of appeals by *Allen A. Arntsen, Josann M. Reynolds,* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* Madison, and oral argument by *Josann M. Reynolds.*

For the plaintiff-respondent there was a brief in court of appeals by *Jeffrey J. Grady* and *Grady Law Office,* Madison, and oral argument by *Jeffrey J. Grady.*

There were amicus curiae briefs by *D. J. Weis, Johnson, Weis, Paulson & Priebe, S.C.* and *The Wisconsin Academy of Trial Lawyers,* Rhinelander; *Scott G. Pernitz,* and *Winner, McCallum, Wixson & Pernitz* and *Wisconsin Insurance Alliance,* Madison; *Ward I. Richter, Mary L. McDaniel, Bell, Metzner & Gierhart, S.C.* and *The Civil Trial Counsel of Wisconsin, Inc.,* Madison.

LOUIS J. CECI, J. This is an appeal from a decision of the circuit court for Dane county, Susan Steingass, circuit judge, accepted on appellants' petition to bypass the court of appeals pursuant to sec. 808.05(1), Stats. Plaintiff-respondent, Carol Tucker (respondent or Tucker) commenced this action in both an individual capacity and as the special administrator of the estate of her minor son, Nathaniel Tucker (Nathaniel) against Marvin S. Marcus, d/b/a MGM Health Club, and Continental Casualty Company (referred to collectively as appellants or Marcus). The essential facts of this case are undisputed. The deceased, Nathaniel, was fourteen years old on April 9, 1983, the day he drowned at a swimming pool at the MGM Health Club, owned and operated by Marcus in Madison, Wisconsin. Nathaniel was at the pool on the day of the drowning incident with his two minor

sisters and an adult supervisor. Although the precise cause of the drowning was not established, there was evidence that Nathaniel's swimming skills were undeveloped. There was additional testimony proffered to establish that the condition of the water in the pool may have contributed to the drowning by unnecessarily delaying the rescue. The respondent offered the evidence of the condition of the pool and of repeated violations of Wis. Admin. Code ch. HSS 171 (May 1982), regulating public swimming places, as evidence of outrageous conduct justifying an award of punitive damages.

█ This matter was tried to a jury, and on February 14, 1986, the jury rendered a verdict apportioning seventy per cent of the causal negligence to Nathaniel. Ten per cent of the causal negligence was attributed to Marcus, and twenty per cent to Nathaniel's adult supervisor. The jury then awarded both compensatory and punitive damages to the respondent in a wrongful death action and to Nathaniel's estate in a survival action.[1] There is no dispute before this court that

---

[1] The jury verdict was, in relevant part, as follows:

"*QUESTION NO. 8:* ... Assuming the total negligence involved in causing the accident to be 100%, what percentage of causal negligence, if any, do you attribute to:

| | | |
|---|---|---|
| "A. Marvin Marcus d/b/a MGM Health Club | 10% | ... |
| "B. Nathaniel Tucker | 70% | ... |
| "C. Toni Elliott [Nathaniel's adult supervisor] | 20% | ... |

"*QUESTION NO. 9:* Answer this question irrespective of your answers to the preceding questions: What sum of money will fairly and reasonably compensate the Plaintiff, Carol Tucker, with respect to her:

compensatory damages were unavailable under sec. 895.045, Stats., due to the allocation of negligence, or that punitive damages could not be awarded in Wisconsin for a wrongful death action under *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 315, 294 N.W.2d 437 (1980). Rather, the sole issue before this court is whether Nathaniel's estate is entitled to the jury award of $50,000 as punitive damages for the survival action where compensatory damages are not available under sec. 895.045 due to the apportionment of negligence.

The trial court determined that Nathaniel's estate was entitled to $50,000 as punitive damages. Specifically, the trial court found insignificant the fact that the respondent did not actually receive compensatory damages and stated that "punitive damages ... are not effected [sic] by the attribution of fault." We disagree. In order for punitive damages to be available to a claimant, actual damages must have been awarded and recovered.

## I.

Two primary questions arise with respect to the relationship between compensatory and punitive damages under the Wisconsin comparative negligence law.

"A. Loss of society and companionship: $25,000
"B. Punitive damages: $10,000

*"QUESTION No. 10:* Answer this question irrespective of your answers to the preceding questions: What sum of money will fairly and reasonably compensate the Estate of Nathaniel Tucker for damages resulting to it with respect to:

"A. Pain and suffering: $25,000
"B. Punitive damages: $50,000

"..."

First, appellants argue that the term "damages for negligence" as used in sec. 895.045, Stats., encompasses all damages, including punitive damages. Should this argument be accepted, punitive damages would be available only where the plaintiff's negligence was no greater than the negligence of the person from whom recovery was sought and, if awarded, would be subject to proportional reduction. Alternatively, appellants assert that an award of punitive damages must be supported by a right to recover compensatory damages under sec. 895.045. Contrary to the first argument which is fundamentally one of statutory construction, the second argument is founded upon the common law principle that punitive damages must be supported by actual damages.

The interpretation of a statute is a question of law. *Delvaux v. Vanden Langenberg,* 130 Wis. 2d 464, 475, 387 N.W.2d 751 (1986). Accordingly, to the extent that we are called upon to interpret sec. 895.045, we are deciding a question of law, which is reviewable by this court without deference to the trial court. *Brown v. Maxey,* 124 Wis. 2d 426, 431, 369 N.W.2d 677, *reconsideration denied* 126 Wis. 2d 40, 373 N.W.2d 672 (1985). As we have previously stated, "The issue of whether punitive damages are recoverable in negligence actions is a question of law." *Id.*

II.

We address first the appellants' position that punitive damages are "damages for negligence" under sec. 895.045, Stats. Section 895.045 provides as follows:

"**895.045 Contributory negligence.** Contributory negligence shall not bar recovery in an action by

432

any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Wisconsin first adopted a system of comparative negligence in 1931. 1931 Wis. Laws ch. 242. In 1971, the comparative negligence law was changed from one prohibiting recovery of damages for negligence if the injured person's negligence was "as great as" that of the wrongdoer, to one permitting recovery unless the injured person's negligence was "greater than" the negligence of the person against whom recovery is sought. 1971 Wis. Laws ch. 47. The statute's language "damages for negligence" has remained unchanged. However, while an examination of the legislative history has not revealed an express indication of legislative intent[2] with respect to the interpretation to be given the phrase "damages for negligence," the scope of "damages for negligence" under sec. 895.045 cannot consistently, with well-recognized principles of

[2]Contrary to the dissent, we do not find the article written by Joseph Padway to be determinative of legislative intent with respect to the present issue. *See* Padway, *Comparative Negligence,* 16 Marq. L. Rev. 1 (1931). Prior to *Bielski v. Schulze,* 16 Wis. 2d 1, 114 N.W.2d 105 (1962), gross negligence was not compared to ordinary negligence under the comparative negligence statute. Additionally, punitive damages were available only for conduct amounting to gross negligence. As such, any conduct for which punitive damages might be awarded would not be subject to the comparative negligence law. For this reason, the comments of former legislator Padway offer no firm indication of legislative intent regarding the present issue.

statutory construction, be interpreted to include punitive damages.

Specifically, because there is a presumption that where the legislature substantially reenacts a statute it adopts construction previously placed on that statute, we must interpret the statute to be consistent with case law predating sec. 895.045, Stats. *Delvaux v. Vanden Langenberg,* 130 Wis. 2d 464, 476, 387 N.W.2d 751 (1986) (quoting *Zimmerman v. Wisconsin Electric Power Co.,* 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968)): *Munninghoff v. Wisconsin Conservation Commission,* 255 Wis. 252, 258, 38 N.W.2d 712 (1949); *State v. Hackbarth,* 228 Wis. 108, 121, 279 N.W. 687 (1938). In this regard, this court's decision in *Bielski v. Schulze,* 16 Wis. 2d 1, 114 N.W.2d 105 (1962), becomes significant. In *Bielski,* this court abolished the doctrine of gross negligence and, in dicta, further stated: "We recognize the abolition of gross negligence does away with the basis for punitive damages in negligence cases. But punitive damages are given, not to compensate the plaintiff for his injury, but to punish and deter the tortfeasor, and were acquired by gross negligence as accoutrements of intentional torts." 16 Wis. 2d at 18. Although this court, in *Wangen,* explained the *Bielski* holding and explicitly rejected an interpretation of the decision which would eliminate outrageous conduct as a basis for awarding punitive damages in a negligence action,[3] this decision

---

[3]The court in *Wangen* noted that aggravated conduct characterized as "outrageous" conduct may also fit the description of "gross negligence." 97 Wis. 2d at 275. However, throughout this opinion, the term "outrageous conduct" will be used, as it was in *Wangen,* to indicate conduct which would justify the imposition of punitive damages.

was rendered *after* the legislature had reenacted the comparative negligence law. *See Wangen,* 97 Wis. 2d at 275. Consequently, since *Bielski* had been decided and not yet modified at the time of the 1971 amendment to the comparative negligence statute, the legislature cannot be presumed to have intended damages for negligence to include punitive damages absent express language so indicating.

Furthermore, while *Wangen* circumscribed the interpretation to be given the *Bielski* holding, the court in *Wangen* nevertheless maintained, "[W]e interpret the dicta in *Bielski* to mean that punitive damages are not recoverable if the wrongdoer's conduct is merely negligent. *Punitive damages do not rise from negligence.*" 97 Wis. 2d at 275 (emphasis added). Similarly, in *Brown*, 124 Wis. 2d at 432, this court stated, "In a negligence case, if the plaintiff proves only those elements constituting the cause of action, punitive damages are not available." Therefore, notwithstanding the probable intent which should be attributed to the legislature in reenacting the comparative negligence statute, there exists, in the fact of this court's adherence to the position that punitive damages are not available for ordinary negligence, further reason to reject an interpretation of sec. 895.045 under which "damages for negligence" would include punitive damages. Nothing in the language of the statute indicates that negligence referred to therein is intended to include outrageous conduct, or anything beyond ordinary negligence.

Our position that punitive damages are not damages for negligence under sec. 895.045 finds support among other jurisdictions. For example, in *Lane v. Meserve,* 20 Mass. App. Ct. 659, 482 N.E.2d 530, *review*

*denied* 396 Mass. 1103, 485 N.E.2d 188 (1985), the Massachusetts Court of Appeals construed a comparative negligence statute identical with respect to the "damages for negligence" language of sec. 895.045. The court in *Lane* stated in relevant part as follows: "The comparative negligence statute, G.L. c. 231, § 85, refers only to 'damages for negligence,' and we construe the statutory language as meaning compensatory damages only." 20 Mass. App. Ct. at 664, 482 N.E.2d at 533.

Perhaps even more fundamentally, there exists a basis to reject any interpretation of sec. 895.045, Stats., which would include punitive damages within the phrase "damages for negligence." Specifically, such an outcome would categorically deny recognition to the purpose of punitive damages:[4] "Punitive dam-

---

[4]The concept underlying punitive damages has been described as follows:

"The idea of punishment, or of discouraging other offenses, usually does not enter into tort law, except in so far as it may lead the courts to weight the scales somewhat in favor of the plaintiff's interests in determining that a tort has been committed in the first place. In one rather anomalous respect, however, the ideas underlying the criminal law have invaded the field of torts. Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action 'punitive' or 'exemplary' damages, or what is sometimes called 'smart money.' Such damages are given to the plaintiff over and above the full compensation for the injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example.

\*\*\*

"Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a

ages are properly denominated 'smart money' and are designed to hurt in order to punish and to deter." *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 234, 291 N.W.2d 516 (1980) (quoting *Cieslewicz v. Mutual Service Cas. Ins. Co.,* 84 Wis. 2d 91, 102, 267 N.W.2d 595 (1978)). Punishment and deterrence are purposes fundamentally distinct from "the basic goal of the law of negligence, the equitable distribution of the loss in relation to the respective contribution of the faults causing it." *Bielski,* 16 Wis. 2d at 17. Reverence to the purpose of punitive damages has resulted in this court's refusal to adopt a mathematical formula for awarding punitive damages. *Brown,* 124 Wis. 2d at 440 (quoting *Fahrenberg,* 96 Wis. 2d at 236). The inclusion of punitive damages under the statutory phrase "damages for negligence" would necessarily require a reduction of punitive damages proportionate to comparative negligence; such a result would entail a mathematical formula, which result we have expressly and repeatedly rejected.[5] Our analysis is consistent

conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. There is general agreement that, because it lacks this element, mere negligence is not enough . . . ." W. Prosser & W. Keeton, The Law of Torts, § 2 at 9–10 (5th ed. 1984) (footnotes omitted).

[5]Consistent with our position regarding the apportionment of punitive damages is the following observation:

"Where the negligent conduct of the defendant is sufficiently aggravated that it will support an award for punitive damages, the question arises whether punitive damages may be apportioned as are compensatory damages. A majority of courts addressing the issue of whether comparative negligence affects the award of punitive damages have held that the contributory negligence of the plaintiff should in no way reduce the punitive damages award. The rationale supporting this view is based on the policies behind comparative negligence and punitive damages." C. Heft & C. Heft,

with that employed by those jurisdictions which have recognized the need to "equitably divide responsibility for claimed losses while keeping intact the policy of punishing wanton acts." *Bowman v. Doherty,* 235 Kan. 870, 881, 686 P.2d 112, 121 (1984) (quoting *Tampa Electric Co. v. Stone & Webster Engineering Corp.,* 367 F. Supp. 27, 38 (M. D. Fla. 1973)).[6]

## III.

For the above-articulated reasons, we reject as a basis for finding error in the trial court's decision to award punitive damages the appellants' position that "damages for negligence" under sec. 895.045, Stats., include punitive damages which would consequently be precluded where the claimant's negligence exceeds that of the individual from whom recovery is sought. We nevertheless find that punitive damages were inappropriately allowed in this case, since an award of actual damages was unavailable due to the operation of sec. 895.045.

A general and perhaps almost universally accepted rule is that punitive damages cannot be awarded in

Comparative Negligence Manual, § 1.310 at 63 (Rev. ed. 1986). *See also* H. Woods, Comparative Fault, § 7:5 at 174 (2d ed. 1987); 1 M. Bender, Comparative Negligence, § 4.30[5] at 62–63 (2d ed. 1987).

[6]*See also Amoco Pipeline Co. v. Montgomery,* 487 F. Supp. 1268 (W.D. Okla. 1980); *Campbell v. Van Roekel,* 347 N.W.2d 406, 410 (Iowa 1984) (citing *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 294 N.W.2d 437 (1980)). *See generally* Annotation, *Effect of Plaintiff's Comparative Negligence in Reducing Punitive Damages Recoverable,* 27 A.L.R.4th 318 (1984). *Compare Hondo's Truck Stop Cafe, Inc. v. Clemmons,* 716 S.W.2d 725 (Tex. Ct. App. 1986), *and Tatum v. Preston Carter Co.,* 702 S.W.2d 186 (Tex. 1986), *with City of San Antonio v. Hamilton,* 714 S.W.2d 372 (Tex. Ct. App. 1986).

the absence of actual damage. *See, e.g.,* D. Dobbs, Law of Remedies, sec. 3.9 at 208 (1973); Annotation, *Sufficiency of Showing of Actual Damages to Support Award of Punitive Damages—Modern Cases,* 40 A.L.R.4th 11, 18 (1985) [hereinafter Annotation, *Sufficiency of Showing of Actual Damages*]. However, jurisdictions diverge regarding that aspect of this general rule which is presently before this court: the extent to which "actual damage" must be established. *Id.* We hold today that punitive damages are not available where there has been no "award" of actual damages.[7] In this regard, we note, for the purpose of clarification and in response to the dissent, that the jury's finding that there had been injury suffered, and ascertainment of a sum which would fairly compensate the respondent for the injury suffered, did not constitute an "award" of actual damages. An "award" represents a remedy recoverable in accordance with an order for judgment. It is not enough that actual damages may have been "suffered" or "sustained" in order for punitive damages to be awarded. This holding is firmly rooted in long-standing principles of Wisconsin law.

In *Hanson v. Valdivia,* 51 Wis. 2d 466, 187 N.W.2d 151 (1971), this court considered whether children of a wronged party could recover punitive damages in a survival action. Although some "actual injury" had been "suffered" by the conduct of the alleged wrongdoer, no compensatory damages were recoverable since the cause of action for which damages were sought did not pass to the estate of the wronged. The

---

[7]For a summary of those jurisdictions which similarly require that punitive damages be supported by an award of actual damages, see Annotation, *Sufficiency of Showing of Actual Damages, supra* at sec. 3. *See also infra* n. 9.

court thus held that punitive damages could not be awarded. "[T]he rule is well established in this state that a claim for punitive damages alone is not sufficient to support a cause of action. There must be a showing of some actual injury *which would justify an award of actual or compensatory damages* before punitive damages may be awarded." 51 Wis. 2d at 474 (emphasis added) (citing *Widemshek v. Fale,* 17 Wis. 2d 337, 117 N.W.2d 275 (1962)).

■

In *Hanson,* punitive damages were not available because the "cause of action" for damages for the loss of marital services was not found to constitute a cause of action for "damage done to a property right" such as to survive the death of the wronged individual under sec. 895.01, Stats. Of course, whereas in *Hanson* the court determined that there was no "cause of action" for compensatory damages to support the award of punitive damages, there was, in the case at bar, a valid cause of action.[8] Thus, we must now reach the question reserved in *Wussow v. Commercial Mechanisms,* 97 Wis. 2d 136, 151, 293 N.W.2d 897 (1980), of whether there may be a "remedy of punitive damages where no compensatory damages have been suffered or sustained" and further determine whether there must have, in addition, been actual recovery of compensatory damages for injury suffered as a condition precedent to an award of punitive damages. We hold that a necessary extension of the principles articulated in *Hanson* requires that where there exists

_____

[8]Appellants argue that there is no "cause of action" because compensatory damages are not available due to the operation of sec. 895.045. We reject this argument, as we rejected a similar position in *Wussow v. Commercial Mechanisms,* 97 Wis. 2d 136, 293 N.W.2d 897 (1980).

a "cause of action," but the action is not one for which the recovery of compensatory damages is justified, punitive damages cannot be awarded. To hold otherwise would require an unjustified deviation from our system of comparative negligence.

This court's unwillingness to depart from the legislature's adoption of a system of modified comparative negligence has, in previous decisions, been made apparent. In *Vincent v. Pabst Brewing Co.,* 47 Wis. 2d 120, 177 N.W.2d 513 (1970), we declined the invitation to adopt a system of pure comparative negligence:

> "Although considerable disagreement exists as to whether a doctrine of pure comparative negligence should be adopted in Wisconsin, there has been considerable agreement as to the ability or propriety of this court's initiating such adoption. . . ."
>
> "'If the legislature had never developed a comparative negligence doctrine, our supreme court might feel free to act. However, the right of the claimant is now controlled by the 1931 statute. The change should be made, but it will require action by the Wisconsin Legislature.'" *Id.* at 126–27 (quoting Campbell, *Wisconsin Law Governing Automobile Accidents—Part II,* 1962 Wis. L. Rev. 557, 569).

More recently, in *Delvaux,* we reaffirmed our commitment to the legislative adoption of a system of modified comparative negligence. We again decline the request to act in derogation of legislative intent. The intent of the legislative was not to create the anomalous result of allowing an award of punitive damages where conduct, although "outrageous," was not, under the standard articulated by the legislature under sec. 895.045, a legally cognizable cause of the

harm. Such a result is unpalatable and would render "defendants the insurers of any who chose to commence an action." *Vincent,* 47 Wis. 2d at 129. In *Vincent,* the court quoted the following passage with regard to our system of modified comparative negligence:

> "'[Pure comparative negligence] would increase claims and litigation. It would put a greater strain on ever increasing insurance rates. It would cause the general public to bear a larger premium for insurance and costs for judicial administration as a result of allowing plaintiffs of greater fault to recover. It would be the first step to a "no fault" system whereby the wrongdoer is allowed to profit from his own wrong. It is contrary to the basic sense of justice created by the majority of citizens and as such embodied in the historic principles of tort law. . . .'" 47 Wis. 2d at 126 (quoting Campbell, *Wisconsin Law Governing Automobile Accidents—Part II,* 1962 Wis. L. Rev. 557, 569).

We think this passage is equally relevant with regard to permitting the recovery of punitive damages where the recovery of compensatory damages would be barred under sec. 895.045; such a result would, in effect, entail for the limited purpose of punitive damages the adoption of the doctrine of pure comparative negligence.

The principle that exemplary damages must be supported by a recoverable award of actual damages was recognized in *Dawson v. Jost,* 35 Wis. 2d 644, 651–52, 151 N.W.2d 717 (1967), in which this court held that despite the fact that it had been established that the plaintiff had "suffered injuries," treble damages were unavailable because the jury determined

442

that the plaintiff was fifty per cent causally negligent which, under the comparative negligence statute prior to the 1971 amendments, would have barred recovery for compensatory damages. We have previously recognized distinctions between punitive and statutory treble damages. *Cieslewicz v. Mutual Service Cas. Ins. Co.,* 84 Wis. 2d 91, 267 N.W.2d 595 (1978). However, *Cieslewicz,* which held that insurance contracts could cover treble damages, was cited and discussed as persuasive authority for the holding in *Brown* allowing insurance coverage for punitive damages. *Brown,* 124 Wis. 2d at 447. Thus, while not exact, the relationship between punitive and exemplary damages has been previously recognized as sufficiently similar to justify consistency in decisions regarding both types of damages. Consequently, to the extent that both treble damages and punitive damages operate as an enhancement of compensatory damages, recovery of compensatory damages should be similarly required for punitive damages. We therefore find that where compensatory damages are not available under sec. 895.045, a "showing" of actual injury sufficient to "justify an award of actual or compensatory damages" has not been made, *Hanson,* 51 Wis. 2d at 474, and neither treble nor punitive damages may thus be recovered.

Similar results have been reached in other jurisdictions. It is widely recognized that despite the unambiguous presence of actual harm, punitive damages are not available absent an award of compensatory damages.[9] Other jurisdictions have consequently

[9]*See, e.g., Bishop v. Firestone Tire & Rubber Co.,* 814 F.2d 437, 447 (7th Cir. 1987) (seventh circuit, applying Indiana law, stated

held that where a jury has returned a verdict finding negligence and assessing compensatory damages, pu-

that any error in refusing to instruct a jury on punitive damages was harmless since the jury had not awarded compensatory damages: "an award of compensatory damages is a prerequisite to an award of punitive damages"); *Deland v. Old Republic Life Ins. Co.,* 758 F.2d 1331, 1339 n. 4 (9th Cir. 1985) ("Since we are affirming the jury verdict for the defendant-appellee, it is unnecessary to consider appellant's contention that the district court erred in dismissing his claim for punitive damages. There can be no punitive damages where compensatory damages have not been awarded."); *Brech v. J. C. Penney Co., Inc.,* 698 F.2d 332 (8th Cir. 1983) (eighth circuit applies South Dakota law to hold that punitive damages are not allowed in products liability case absent an award for compensatory damages); *Jones v. Reagan,* 696 F.2d 551, 554 (7th Cir. 1983) (seventh circuit restates traditional tort rule that "punitive damages will not be awarded unless the plaintiff is awarded some compensatory damages"); *Pennbank v. St. Paul Fire and Marine Ins. Co.,* 669 F. Supp. 122, 127 (W.D. Pa. 1987) ("Punitive damages can only be awarded where compensatory damages have been awarded and the punitives must have some relation to the compensatory award."); *Defeyter v. Riley,* 671 P.2d 995, 998 (Colo. Ct. App. 1983) ("It is a fundamental principle of law that punitive damages may not be awarded absent an award of actual damages."); *Buonopane v. Fritz,* 477 So. 2d 1030, 1030 (Fla. Dist. Ct. App. 1985) ("The law in Florida is clear that one cannot recover for punitive damages if no compensatory damages are awarded."); *Preferred Risk Ins. Co. v. Boykin,* 174 Ga. App. 269, 329 S.E.2d 900 (Ct. App. 1985) (award of exemplary damages reversed where unaccompanied by award of compensatory damages); *McGrew v. Heinold Commodities, Inc.,* 147 Ill. App. 3d 104, 497 N.W.2d 424 (App. Ct. 1986) (Punitive damages can only be awarded when there is an award of compensatory damages); *Stevens v. Jayhawk Realty Co.,* 236 Kan. 90, 91, 689 P.2d 786, 787 (1984) ("A verdict for actual damages is essential to the recovery of punitive damages ...."); *Rite Aid Corp. v. Lake Shore Investors,* 298 Md. 611, 471 A.2d 735 (Ct. App. 1984) (an award of compensatory damages constitutes a condition for the recovery of punitive damages); *Terry v. Houk,* 639 S.W.2d 897, 900 (Mo. Ct. App. 1982)

nitive damages are unavailable where compensatory damages are not awarded in a judgment notwithstanding the verdict. *See, e.g., Riebe v. Riebe,* 252 N.W.2d 175, 178 (N.D. 1977); *Ress v. Rediess,* 130 Colo. 572, 578–79, 278 P.2d 183, 186–87 (1954). More generally, in *Slutzky v. Warbington,* 171 Ga. App. 621, 623, 320 S.E.2d 623, 625 (Ct. App. 1984), the Georgia Court of Appeals stated that where, due to the operation of a guest statute, compensatory damages were unavailable, errors alleged regarding punitive damages were moot since "There can be no recovery of exemplary damages ... unless there is also a recovery of compensatory damages."[10]

---

(although nominal damages may suffice, "Some actual damage award is required as a precondition to a punitive damage award ....."). *Contra Suss v. Schammel,* 375 N.W.2d 252, 255 (Iowa 1985); *Emerson v. Garner,* 732 S.W.2d 613 (Tenn. Ct. App. 1987) (punitive damages cannot be awarded absent award of compensatory damages). For a compilation of contra holdings, see J. Ghiardi & J. Kircher, Punitive Damages: Law and Practice, sec. 5.37 (1987), and Annotation, *Sufficiency of Showing of Actual Damages, supra* p. 439, at sec. 4. *Compare Forsythe v. Elkins,* 700 P.2d 596, 602 (Mont. 1985), *and Doll v. Major Muffler Centers, Inc.,* 687 P.2d 48, 55 (Mont. 1984).

[10]The *Slutzky* decision was premised upon the interpretation of Ga. Code Ann. sec. 51–12–5, which provides for an award of "additional damages" for the purpose of deterrence. Wisconsin common law similarly refers to punitive damages as damages which may be awarded "in addition to compensatory damages." *Meshane v. Second Street Co.,* 197 Wis. 382, 387, 222 N.W. 320 (1928). *See also Williams v. Walker,* 256 Ark. 421, 422, 508 S.W.2d 52, 53 (1974) (with respect to availability of punitive damages for gross negligence, the court stated that "[t]he question, however, is still whether Williams proved his assertion of actual damage caused by ordinary negligence; because 'the recovery of exemplary damages is dependent upon the recovery of actual damages'"); *Skinner v. Martin,* 455 N.E.2d 1168, 1171 (Ind. Ct. App. 1983) (with

That the general principle that punitive damages must be supported by "actual damages" requires that damages actually be awarded is further indicated by principles applied in determining the reasonableness of the amount of an award of punitive damages where the propriety of some award is not disputed. Those factors which should be considered by a jury in determining the proper amount of punitive damages to be awarded include: "the grievousness of defendant's acts; the degree of malicious intention; the potential damage which might have been done by such acts as well as the actual damage; and the defendant's ability to pay." *Wangen,* 97 Wis. 2d at 302. While refusing to adopt a mathematical formula for awarding punitive damages, *Brown,* 124 Wis. 2d at 440, this court has stated that an award "which is disproportionate to the wrongdoing is excessive and is contrary to public policy." *Wangen,* 97 Wis. 2d at 303. This remains our position.

respect to the operation of the Indiana Workers' Compensation exclusivity provision, the court stated: "Punitive damages are not available where compensatory damages are not awarded."); *Gonzales v. Sansoy, M.D.,* 103 N.M. 127, 129, 703 P.2d 904, 906 (Ct. App. 1984) ("Because we reversed on the compensatory damages claim, we did not reach the issue of punitive damages in the initial appeal. An award of punitive damages must be supported by an award of compensatory damages."); *Barrino v. Radiator Specialty Co.,* 315 N.C. 500, 515, 340 S.E.2d 295, 304 (1986) (court held with respect to the operation of the exclusivity provision of the North Carolina Workers Compensation Act that "At any point where compensatory damages are barred, punitive damages are also barred"); *Cherry v. Turner,* 560 S.W.2d 794, 796 (Tex. Ct. App. 1978) ("We adhere to the rule as clearly stated in *Fort Worth Elevators [v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934)] ... that recovery of exemplary damages must be refused in the absence of *recovery* of actual damages."). (Emphasis in original.)

One factor to be considered in determining whether an award is excessive is if the punitive damages award bears a reasonable relationship to the award of compensatory damages. This position was previously enunciated by this court in *Fahrenberg,* 96 Wis. 2d at 235–36, in which we refused to require that punitive damages bear an arithmetic relationship to a compensatory award but nevertheless noted that the amount of compensatory damages is "relevant" to the proper amount of punitive damages which could be awarded.[11] Specifically, in *Fahrenberg* we stated,

> "Although the amount of compensatory damages and criminal penalties have some relevancy to the amount of punitive damages and may be factors in determining the reasonableness of the punitive damages award, we have not been willing in the past, and are not willing in this case, to adopt a mathematical formula for awarding punitive damages." *Id.*

The position recognizing the need for the establishment of some relationship between compensatory and punitive damages is one adopted by most jurisdictions. *See* W. Prosser & W. Keeton, The Law of Torts, sec. 2 at 14–15 (5th ed. 1984). This determination should be made on a case-by-case basis, with due regard given to the discretion of the jury in assessing punitive dam-

[11]Our holding rejecting mathematical comparison while requiring a reasonable relationship between punitive and compensatory damages is one which has been followed by other jurisdictions. *See, e.g., Betts v. Allstate Ins. Co.,* 154 Cal. App. 3d 688, 711–12, 201 Cal Rptr. 528, 542 (Ct. App. 1984). *See also* Annotation, *Sufficiency of Showing of Actual Damages, supra* p. 439, at secs. 13–14, for a compilation of those jurisdictions which have held similarly.

ages. *See, e.g., Wangen,* 97 Wis. 2d at 301–02. For this reason, the criterion of a reasonable relationship is not a requirement of a fixed ratio, for such a requirement would hinder the purpose of punitive damages to punish and to deter. However, where causal negligence is insufficient to justify an award of compensatory damages, there is no legally cognizable wrongdoing, and an award of any punitive damages cannot under any circumstances be deemed related, reasonably or otherwise, to compensatory damages. A result permitting punitive damages where no compensatory damages have been awarded must be said to necessarily " 'shock the judicial conscience.' " *See Brown,* 124 Wis. 2d at 440 (quoting *Fahrenberg,* 96 Wis. 2d at 236).

A federal district court in *Channel 20, Inc. v. World Wide Towers Services, Inc.,* 607 F. Supp. 551, 556–57 (S.D. Tex. 1985), reached a similar result and stated: "It is axiomatic that punitive damages must bear some reasonable relationship to, and be supported by, the imposition of actual damages." Likewise, in *Sulecki v. Southeast National Bank,* 358 Pa. Super. 132, 136, 516 A.2d 1217, 1219 (1986), the court considered the issue of "whether any punitive award can bear a reasonable relationship to a zero compensatory award." The court concluded as follows: "[P]unitive damages may not be imposed in cases of zero compensatory awards. Since punitives are not allowable, the issue of proportionality should never arise." *Id. See also Contractor Utility Sales Co. v. Certain-Teed Corp.,* 748 F.2d 1151, 1156 (7th Cir. 1984), *cert. denied* 470 U.S. 1029 (1985).

Finally, we note that our decision in *Wussow* is consistent with our holding today requiring as a condition precedent to the recovery of punitive damages an award of compensatory damages. *Wussow* was

expressly premised on the fact that "actual damages were suffered and payment was made." This court further explained:

> "It is both rational and consistent with the common law to allow punitive damages in this case, where actual damages were sustained and compensatory payment was made. This is especially true in this case, because the damage claim was dismissed with the defendants' knowledge that punitive damages remained a remedy still to be sought. It cannot be argued that plaintiff abandoned his cause of action by accepting partial compensation, when the record shows that for a *quid pro quo* he compromised one remedy but retained the whole cause of action (the set of operative facts) as evidence of his right to an additional remedy of punitive damages." 97 Wis. 2d at 151.

Consequently, and as discussed above, we did not reach in *Wussow* the present issue of whether punitive damages may be awarded where there has been no payment or recovery of compensatory damages. In the present case, actual damages of the most severe form were sustained; however, there was neither voluntary payment by means of settlement nor a right to receive compensatory damages under sec. 895.045. No Wisconsin precedent supports the award of punitive damages in such a case. Where "actual injury" does not justify the recovery or an "award" of actual or compensatory damages due to the operation of sec. 895.045, punitive damages are barred. We are, therefore, in agreement with the statement of the court of appeals that where "compensatory damages cannot be given ... neither can punitive damages." *Bachand v. Connecticut Gen-*

*eral Life Ins. Co.,* 101 Wis. 2d 617, 633, 305 N.W.2d 149 (Ct. App. 1981).

In a case factually similar to the one at bar, *Cox v. Kansas Gas & Electric Co.,* 630 F. Supp. 95 (D. Kan. 1986), the comparative negligence law of Kansas was applied to reach a similar result. Although due to the apportionment of comparatively less negligence to the plaintiff in *Cox* the prospect of permitting punitive damages was less egregious, the court nevertheless found an award of exemplary damages to be barred where compensatory damages under the comparative negligence statute were unavailable. Specifically, the court articulated its position as follows:

> "[W]e note that the issue of punitive damages is moot. Because the jury found plaintiff to be sixty percent at fault, plaintiff was not entitled to recover actual damages. K.S.A. 60–258a. Kansas law is quite clear that a plaintiff must establish a right to recover actual damages before punitive damages may be awarded. *Lantz v. City of Lawrence,* 232 Kan. 492, 657 P.2d 539 (1983)." *Id.* at 101.

In a related matter, the Supreme Court of Arkansas held in *Williams v. Carr,* 263 Ark. 326, 565 S.W.2d 400 (1978), that where a jury apportioned fifty per cent of the negligence to the plaintiff, thereby precluding an award of actual damages under the comparative negligence statute, punitive damages could not be recovered.

 To permit an award of punitive damages where the operation of sec. 895.045, Stats., prohibits the recovery of compensatory damages would undermine the purpose of our system of comparative negligence.

Prior to *Bielski,* a plaintiff who could establish gross negligence on the part of the defendant could recover compensatory damages unreduced by his or her proportional causal negligence. *See, e.g., Jacobs v. General Accident Fire & Life Assurance Corp.,* 14 Wis. 2d 1, 109 N.W.2d 462 (1961). Alternatively stated, despite the fact that his or her own causal negligence exceeded that of the defendant, under the doctrine of gross negligence predating *Bielski,* a plaintiff would be entitled to compensatory and, thus, punitive damages. This is, however, no longer the law. Our determination in *Bielski,* which in pertinent part remains unchanged, held that distinctions of "gross" and "ordinary" negligence were inappropriate under our comparative negligence statute for the purpose of assessing compensatory damages. While the dicta in this holding was later rejected to the extent that it could be interpreted as eliminating punitive damages for "outrageous" conduct in a negligence action, this court has steadfastly adhered to the proposition that ordinary negligence may be compared with gross negligence or outrageous conduct under the comparative negligence statute.[12]

---

[12]The relationship between ordinary negligence and outrageous conduct was discussed in *Wangen* as follows:

"Although *Bielski* eliminated the proof of aggravated conduct characterized as gross negligence in determining liability for compensatory damages and the amount thereof in negligence actions, *Bielski* has not been interpreted by this court as eliminating such conduct as the basis for punitive damages. We do not read *Bielski* as holding that 'outrageous' conduct, which may also fit the description of 'gross negligence,' has no place in determining the existence of liability for punitive damages and in determining the amount of punitive damages in a product liability tort action. To the extent that the dicta quoted from

Hence, by our determination that comparative negligence would reduce the recovery of compensatory damages despite the "outrageous" nature of a defendant's conduct, this court joined those jurisdictions recognizing "that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional" but recognizing that "[t]he law of punitive damages remains a separate consideration." *See, e.g., Sorensen v. Allred,* 112 Cal. App. 3d 717, 722, 169 Cal. Rptr. 441, 444 (Ct. App. 1980) (emphasis deleted) (quoting *Li v. Yellow Cab Co. of California,* 13 Cal. 3d 804, 826, 119 Cal. Rptr. 858, 873, 532 P.2d 1226, 1241 (1975)). *See also* V. Schwartz, Comparative Negligence, sec. 5.3 at 106 and sec. 5.4 at 108 (2d ed. 1986). It is, moreover, precisely because this court requires the apportionment of compensatory damages, notwithstanding the fact that the negligence of one party constitutes outrageous conduct, that where, as a result of this apportionment, no compensatory damages are recoverable, punitive damages are not justified. This result gives due regard to both the statutory scheme of comparative fault and the policy of punishing outrageous conduct by awarding, where available, punitive damages undiminished by proportional negligence. To permit the recovery of punitive damages where the operation of sec. 895.045 denies legal significance to the degree of causal negligence would be inconsistent with our commitment to the doctrine of comparative negligence. "This state as a matter of public policy has been committed to the doctrine of comparative negligence." *Presser v.*

*Bielski* can be interpreted otherwise, we reject such an interpretation." 97 Wis. 2d at 275. (Footnote omitted.)

452

*Siesel Construction Co.,* 19 Wis. 2d 54, 66, 119 N.W.2d 405 (1963).

The requirement that a plaintiff be awarded compensatory damages before punitive damages are recoverable is premised upon the both elementary and historic principles of tort law which necessitate not only proof of injury as a basis for recovery, but of causation as well. Under our system of comparative negligence, as provided by sec. 895.045, causation does not give rise to recovery where it is established that the negligence of the plaintiff exceeds that of the wrongdoer. The theory justifying this outcome was articulated in *Vincent* as follows:

> "Since poverty can affect defendants as well as plaintiffs, the possibility that given an ultimate fact verdict, which is necessary in implementing any form of comparative negligence, a defendant will always be found partially negligent should be considered. By adopting pure comparative negligence out of a sense of intellectual fairness one might well be eliminating what has been called an arbitrary rule of no recovery, while at the same time creating an arbitrary rule of partial recovery in *all* cases. If such were the case, pure comparative negligence would render defendants the insurers of any who chose to commence an action."
> *Vincent,* 47 Wis. 2d at 129. (Emphasis in original.)

Due to the flexible nature of punitive damages awards and the fact that "[i]t is generally agreed that punitive damages are a windfall to the plaintiff . . .," W. Prosser & W. Keeton, The Law of Torts, sec. 2 at 14 (5th ed. 1984), the impact of permitting punitive damages where a claimant is more negligent than an alleged wrongdoer could be potentially even more severe than would the allowance of compensatory damages. Thus,

beyond the inherent conceptual problem imbued in a system permitting recovery against a defendant whose negligence is not legally cognizable, the practical impact of such a result is untenable.

Compensatory damages, since *Bielski,* have been barred where the plaintiff's negligence exceeds that of the defendant, notwithstanding the fact of defendant's gross negligence or outrageous conduct. Consequently, despite the "outrageous" quality of a defendant's conduct, there can be no award, under such an apportionment of negligence, of compensatory damages to support punitive damages. However, because Wisconsin has repeatedly recognized that the purposes of punitive damages and compensatory damages are distinct, the relationship between comparative negligence and punitive damages goes no further. We expressly decline to adopt an interpretation of sec. 895.045 under which punitive damages would be deemed "damages for negligence" and, as such, subject to proportionate reduction. Our decision today represents a necessary extension of those earlier decisions in which we have deferred to the legislative adoption of a system of modified comparative negligence and to the theory that a claimant should not be "allowed to profit from his own wrong." *Vincent,* 47 Wis. 2d at 126. Accordingly, we hold that punitive damages may not be recovered where actual damages are unavailable due to the operation of sec. 895.045, Stats.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to vacate the judgment for punitive damages.

HEFFERNAN, CHIEF JUSTICE, (*dissenting*). I agree with the majority that the term, "damages for negligence," under sec 895.045, Stats. (Comparative negligence), does not encompass punitive damages. This is because, as the majority correctly states, punitive damages arise from a different rationale than compensatory damages. *See, Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 275, 278–84, 294 N.W.2d 437 (1980).

This interpretation also corresponds to legislative intent: An article by one of the authors of ch. 242, 1931 Wis. Laws (the predecessor of the current chapter) indicates that the comparative negligence statute was to have no effect on punitive damages. Padway, *Comparative Negligence,* 16 Marq. L. Rev. 1, 20 (1931).

Although I agree with the majority on this first issue, the majority and I part company on the proposition that, absent a monetary recovery for compensatory damages, no punitive damages may be recovered. Instead, I would hold that, if both punitive and compensatory damages are awarded by the jury, punitive damages may be recovered even though compensatory damages are statutorily barred.

It is true, as the majority states, that the universal rule on punitive damages is that none may be awarded unless the party seeking them has sustained actual damage. However, this truism does not settle the issue because the term, "actual damages," needs to be defined.

Today's majority holds that this term should be defined in a manner that no punitive damages may be awarded in the absence of a recovery for compensatory damages. This definition would make "actual damages" synonymous with "recovery for actual damages." This court's precedent, as well as this state's

legislative history, however, ought to lead to a defini-
tion of actual damages so that a statutory bar on
recovery of compensatory damages has no effect on
punitive damages. In other words, the term, "actual
damages," ought to be defined to mean "compensable
injury" whether or not an award is permitted under
the comparison of negligence. For reasons of prece-
dent and sound logic, I believe the latter definition
would result in the only appropriate rule.

The difficulty in this case arises because, al-
though the jury granted an award of compensatory
damages, collection of the award is barred by the
contributory negligence statute. Note that this is a
very different situation from one in which no compen-
satory award was even justified in the first place.[1] In
such a case, there would be no injury sustained, so no
award would be proper.[2] In this case, injury was
sustained, and the jury made an award for it. The
question presented is therefore not whether an award
for punitive damages can stand absent an award for
compensatory damages, payment of which is sanc-
tioned by the comparative negligence statute; instead,
the question is whether a statutory bar on compensa-
tory damages can also bar punitive damages.

Turning first to the precedents whose use by the
majority I find questionable: *Widemshek v. Fale,* 17

---

[1]This situation is, however, similar to one where a compensa-
tory award is justified, but cannot be awarded because the damage
is not quantifiable. It is also similar to a situation where the
compensatory damages have been settled. *See,* discussion *infra* at
459.

[2]If no injury were sustained, the situation might rise to the
level of there simply not being a cause of action in the first place, a
theory urged by appellant in this case, but correctly rejected by
the majority.

Wis. 2d 337, 117 N.W.2d 275 (1962), and *Hanson v. Valdivia,* 51 Wis. 2d 466, 187 N.W.2d 151 (1971), do not stand for the proposition that an award of actual damages must be payable to the plaintiff before punitive damages may be awarded. In *Widemshek,* plaintiff, despite defendant's bad acts, suffered no loss. Therefore, this court held that plaintiff was entitled to no recovery of any sort. Similarly in *Hanson,* the cause of action under which the plaintiff children sought to recover did not survive their father's death. Again, plaintiffs could not have been said to suffer an injury; and, again, as in *Widemshek,* this court held that, absent injury, no recovery was available. Neither case goes to punitive damages,[3] but instead they stand only for the basic proposition that "a claim for punitive damages alone is not sufficient to support a cause of action." *Hanson,* 51 Wis. 2d at 474.

As is evident, *Widemshek* and *Hanson* simply do not go to the question of whether a statutory bar on payment of awarded compensatory damages also bars punitive damages. Put another way, these cases are inapposite to the case at hand. *Widemshek* and *Hanson* hold that, absent loss, no recovery of any sort may be had. In this case, however, quite unlike those cases, it is undisputed that plaintiff suffered an injury—the ultimate injury of death.

Further, although the holding of these cases is irrelevant to this case, on the issue of what type of injury must underlie an award for punitive damages, the *Hanson* court implied that only such injuries as

[3]*See, Wussow v. Commercial Mechanisms, Inc.,* 97 Wis. 2d 136, 150, 293 N.W.2d 897 (1980) ("*Widemshek* held that, where no actual damage was 'sustained' (p. 343) or 'suffered' (p. 340), there is no cause of action whatsoever. This has nothing to do with punitive damages.").

would *justify* an award of compensatory damages were necessary. *Hanson,* 51 Wis. 2d at 474. Unlike the majority, I do not believe this language is of little consequence; rather, I believe it to be sound support for the position that a recovery of compensatory damages under the comparative negligence law is not necessary to a recovery of punitive damages.

Turning next to the question of whether, under our case law, treble damages and punitive damages are sufficiently similar that cases on treble damages are precedent for cases, such as this one, on punitive damages: In *Cieslewicz v. Mutual Service Casualty Ins. Co.,* 84 Wis. 2d 91, 267 N.W.2d 595 (1978), this court pointedly rejected such a comparison. The court pointed out that the state of mind required is different, the purpose is different, the mode of assessment is different, and the method of calculation if different. *Cieslewicz,* 84 Wis. 2d at 101–02. For these reasons, I am unpersuaded by arguments regarding the precedential value of the requirement, as set forth in the treble damages cases, of a recovery of actual damages as a condition precedent to the recovery of enhanced damages.

As to the last use of precedents I find questionable: In my analysis, our cases requiring that punitive damages bear a reasonable relationship to compensatory damages cannot be read to mean that, when compensatory damages are awarded but not recoverable, punitive damages may not be awarded. Neither *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 236, 291 N.W.2d 516 (1980), nor *Brown v. Maxey,* 124 Wis. 2d 426, 440, 369 N.W.2d 677 (1985), stand for the proposition that allowing punitive damages in the absence of recoverable compensatory damages must be said to "necessarily shock the judicial conscience" as the majority

would have it. In fact, those two cases stand for the proposition that, unless a punitive award is so greatly disproportionate to the compensatory award that it does shock our consciences, we will uphold it. Thus, in *Fahrenberg* we upheld a $125,000 award on $20,000 in compensatory damages; and in *Brown,* we upheld a $200,000 punitive award on about $50,000 in compensatory damages.

These cases, as is also true of the previous cases cited, simply do not go to the question of whether a statutorily barred compensatory award may support a punitive award. These cases go only to the question of disproportionality of the two awards. In this case, the jury awarded plaintiff $50,000 in compensatory damages. In addition, the jury awarded $50,000 in potentially recoverable punitive damages.[4] I cannot speak for the others on this court, but a $50,000 punitive award on a $50,000 compensatory award is not so disproportionate as to shock my conscience.

Turning from precedent I find questionable to that I find persuasive, the case of *Wussow v. Commercial Mechanisms, Inc.,* 97 Wis. 2d 136, 293 N.W.2d 897 (1980), addressed a situation similar in many respects to this case. There, the question presented was whether, after the parties had reached a settlement on the compensatory damages, the plaintiff could still maintain an action on punitive damages. This court held that the disposition of the compensatory damage claim had no bearing on the punitive damage claim,

---

[4]Actually, the jury awarded $60,000 punitive damages, $10,000 to Mrs. Tucker personally in her wrongful death action, and $50,000 to Nathaniel Tucker's estate. However, *Wangen v. Ford Motor Co.,* 97 Wis. 2d at 315, bars recovery of punitive damages incident to damages for wrongful death, so only the $50,000 award to the estate is potentially recoverable.

and that the punitive damage claim was simply the same action as the compensatory damage claim, but for a different (and logically distinct) alternative remedy. *Wussow*, 97 Wis. 2d at 149–50. The majority states that *Wussow* was "expressly premised on the fact that 'actual damages were suffered and payment was made."' Opinion at pages 449–460. A reading of that case will confirm that this was not a " premise" of the case at all, but rather an aside pointing out that, under the specific facts of that case, a holding that punitive damages were not barred was especially obvious.

As in *Wussow*, I would hold that the disposition of the compensatory damages claim is irrelevant to the continued claim for punitive damages. As in that case, I would award punitive damages to the plaintiff in this case.

The upshot of this tour through our precedent is this: The majority states that no precedent of this court supports award of punitive damages in this case. Opinion at page 449. I would not go so far. Instead, I would agree that, while we have no cases which squarely answer the question of whether, despite a statutory bar on compensatory damages, recovery of punitive damages is nevertheless permissible, our precedent markedly tilts in favor of a position response. First, dicta in *Hanson* supports the position that no recovery for injury is required. Second, *Wussow* supports the position that the disposition of the compensatory claim is irrelevant to the award of punitive damages. Further, although none of our cases address the issue squarely, under legislative intent, it is reasonably certain that the comparative negligence statute was not intended to affect awards of punitive damages.

Turning from precedent and history to logic and policy: Punitive damages arise from a different rationale than compensatory damages. Punitive damages are designed to deter outrageous behavior. *See, Wangen,* 97 Wis. 2d at 274–75. In this case, Marvin Marcus ran his MGM Health Club in an outrageous manner.

First, the pool area was often dirty, with large earthworms to be found crawling around. This is especially egregious in light of the fact that this is an indoor pool.

Second, the air in the pool enclosure was often so foggy or cloudy that visibility was reduced. This condition arose because the pool, which was heated, released steam into the unheated air above. This condition is even more serious because these foggy conditions were allowed to persist despite frequent instructions from the city pool inspector to keep the air heaters turned on. This instruction was given in order that Marcus might comply with the requirements of the Wisconsin Administrative Code that air temperature be four degrees warmer than pool temperature in order to minimize fog. Nevertheless, it appears, because of purely economic reasons, Marcus simply kept the air heaters off.

Finally, the pool water was yellowish or cloudy. This condition apparently arose due to improper chlorination and filtration, and the filtration system itself was often clogged with the byproducts of human grease, sweat, and urine.

Not surprisingly, the pool was the target of frequent complaints. Further, the pool was the target of frequent visits by pool inspectors seeking to have Marcus maintain the pool in compliance with code requirements.

On the day of Nathaniel's drowning, the air was foggy and the water cloudy. Nathaniel, who was a black child, was not spotted lying on the white pool bottom, despite the fact that, according to evidence adduced, he must have been lying there for between five and fifteen minutes.

When he was finally seen by a passing swimmer, he was initially mistaken for a floor drain because of low visibility through the eight feet of water in which he lay. Finally, his would-be rescuers were unable to see him clearly until they came within two or three feet of him, again because of cloudy water. These details add up to consistently outrageous behavior in performing substandard maintenance.

The purposes of punitive damages is to deter, and such behavior should be deterred. As we have explained previously:

> "Suffice it to say that whatever shortcomings the award of punitive damages may have, nevertheless, it must be remembered that it has the effect of bringing to punishment types of conduct that though oppressive and hurtful to the individual almost invariably go unpunished .... Punitive damages serve not only the aggrieved victim ... but also society, for by this device, a quasi-criminal action is prosecuted, when ordinarily it would not be prosecuted at all .... This court takes the position that punitive damages do serve as a deterrent ...." *Kink v. Combs,* 28 Wis. 2d 65, 80–81, 135 N.W.2d 789 (1965).

Awarding punitive damages in this case would deter pool operators from so poorly maintaining pools that they are a contributing cause of death to swimmers.

Another way of making this same point is that the majority holding confuses the incidental effects of punitive damages with the goal of compensatory damages. The majority holds that to allow punitive damages here would do violence to our system of modified comparative negligence because it would amount to an adoption of pure comparative negligence for the purposes of punitive damages. Slip opinion at page 441. This reasoning illustrates that the majority sees punitive damages as a method of enriching the plaintiff, rather than as a punishment to the wrongdoer. There is no doubt that the plaintiff is enriched, but this is a byproduct of the plaintiff's role as society's representative. The main goal of punitive damages is to deter outrageous behavior by showing the wrongdoer and other potential wrongdoers that a penalty will have to be paid for such actions. This being the case, the point of the affair is not the enrichment derived from receiving payment, but the deterrent penalty suffered by tendering payment.

Moreover, it is significant that punitive damages are not available as a matter of right. They are only available where, in the trial judge's opinion, such damages could possibly be proper under the facts of the case. *Meshane v. Second Street Co.*, 197 Wis. 382, 222 N.W.2d 320 (1928); Ghiardi, *Punitive Damages in Wisconsin*, 60 Marq. L. Rev. 733, 762 (1977). Further, even if punitive damages would be proper, the jury need not award them. *Wangen*, 97 Wis. 2d at 301. Finally, if an award should be excessive, it can always be reduced by remittitur. *See, Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 102 N.W.2d 393 (1960) (progenitor of the "Powers" rule); *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 430, 312 N.W.2d 37 (1981). These observations are important because they confirm the

punishment function of the punitive award. Only in cases of outrageous behavior are such awards justified, and only in cases of outrageous behavior will such awards be sustained.

For all these reasons, the appropriate, and in my view the only correct, rule of law would be to allow punitive damages where compensatory damages, reflecting a jury finding of "injury," are awarded but not recoverable. The purposes of punitive damages are very different from the purposes of compensatory damages, and the statutory bar on compensatory damages should have, and was intended to have, no bearing on punitive damages. Further, as stated above, our Wisconsin precedents implicitly mandate such result. Accordingly, I dissent.

I am authorized to state that JUSTICES ABRA-HAMSON and BABLITCH join in this dissent.